797 F.2d 280
 16 Collier Bankr.Cas.2d 559, 14 Bankr.Ct.Dec. 1247,
Bankr. L. Rep. P 71,265
 BOSTICK FOUNDRY COMPANY, Plaintiff-Appellant,
v.
LINDBERG, A DIVISION OF SOLA BASIC INDUSTRIES, INC.,
Defendant and Third-Party, Plaintiff-Appellee,
v.
VENETTA, INC., Third-Party Defendant.
 No. 85-1637.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 17, 1986.
Decided July 25, 1986.
 
 Timothy D. Wittlinger, argued, Hill, Lewis, Adams, Goodrich & Tait, Detroit, Mich., for plaintiff-appellant.
 W.A. Steiner, Jr., argued, Detroit, Mich., for defendant and third-party, plaintiff-appellee.
 Before KRUPANSKY and WELLFORD, Circuit Judges, and PECK, Senior Circuit Judge.
 KRUPANSKY, Circuit Judge.
 
 
 1
 The plaintiff Bostick Foundry Co. (the plaintiff or Bostick), a Chapter 11 debtor, appealed the order of the district court dismissing its suit against the defendant-appellant Lindberg, Inc. (the defendant or Lindberg), a division of Sola Basic Industries, Inc.
 
 
 2
 The procedural history of the instant case is somewhat involved. Bostick initiated an action in February of 1979 in the United States District Court for the Eastern District of Michigan against the defendant Lindberg, styled Bostick Foundry Co. v. Lindberg, Div. of Sola Basic Industries, No. 79-40044 (E.D.Mich.1979) (later denominated Civil Action No. 79-10297), predicated upon diversity jurisdiction wherein it alleged negligence and breach of warranty incident to the sale by the defendant to the plaintiff of an industrial coreless induction furnace. The defendant counterclaimed and joined a supplier, Venetta, Inc., as a third-party defendant. In December of 1980, the plaintiff Bostick filed a voluntary petition in bankruptcy under Chapter 11 in the Eastern District of Michigan.
 
 
 3
 The docket sheet in the district court disclosed that on February 4, 1981, Judge James Harvey conducted a pretrial conference in the Bostick-Lindberg district court action during which proceeding he reviewed the status of the discovery proceedings which had continued after the filing of the bankruptcy petition and also scheduled a trial date of September 14, 1981. The district court litigation was never removed to the bankruptcy court nor was such removal sought. On August 26, 1981, the bankruptcy court confirmed the sale of certain Bostick assets but excluded therefrom, inter alia, Bostick's district court lawsuit against Lindberg. The bankruptcy court contemporaneously lifted the automatic stay of proceedings that had attached to the district court litigation pursuant to 11 U.S.C. Sec. 362[1] as a result of the voluntary petition in bankruptcy filed by Bostick.
 
 
 4
 On September 17, 1981, Judge Harvey referred the district court litigation to Magistrate Harvey Walker subsequent to designating him as a special master. Judge Harvey thereafter rescheduled trial for March 15, 1982. During the months immediately preceding the rescheduled trial date, the parties continued to pursue exhaustive discovery in preparation for trial. On March 9, 1982, shortly before trial, the defendant's motion for partial summary judgment on certain claims involving implied warranties and incidental and consequential damages was granted by Judge Harvey on the recommendation of Magistrate Walker.
 
 
 5
 On March 15, 1982, the parties appeared in the district court to commence trial. The plaintiff Bostick was represented by its counsel of record Charles White (White), who appeared with William Shapiro, an officer and principal shareholder and creditor of Bostick. Instead of proceeding with the trial, the parties negotiated and concluded a settlement that resolved the claims of all parties in interest, which settlement agreement was placed upon the record of the court. Under the terms of the settlement, the defendant Lindberg was to pay the plaintiff Bostick the sum of $40,000 and the claims and cross-claims of the parties were to be dismissed with prejudice. The parties were to memorialize the settlement by filing with the district court within 30 days an executed settlement agreement incorporating the terms and conditions of their agreement as reflected by the court record. Although an executed agreement was not filed within the 30-day period mandated by the court, the defendant Lindberg forwarded two checks totalling $40,000 to the plaintiff Bostick in accordance with the terms of the settlement.
 
 
 6
 On September 30, 1982, approximately six months after the settlement between the parties, two of Bostick's creditors filed an application in the bankruptcy court seeking to set aside the settlement, charging that it was not in the best interests of the estate. On November 12, 1982, Bankruptcy Judge Ray Graves conducted a hearing ostensibly to determine if the settlement concluded on March 15, 1982 between Bostick and Lindberg in Case No. 79-40044/10297 before the district court was in the best interests of the estate. On that same date, Bankruptcy Judge Graves issued an order wherein he rejected, out of hand, the district court's March 15, 1982 settlement without stating any reasons therefor.[2] On December 23, 1982, then District Judge Ralph Guy, upon reviewing Lindberg's motion for leave to appeal the November 12, 1982 bankruptcy court order to the district court filed pursuant to 28 U.S.C. Sec. 1334, concluded that the bankruptcy court order was not a final appealable order and declined to certify it to the district court as an interlocutory appeal. He dismissed Lindberg's appeal without considering whether the settlement was in the best interests of the estate. No appeal was taken from Judge Guy's order of dismissal.
 
 
 7
 On December 3, 1982, while Lindberg's motion for leave to appeal was pending before District Judge Guy, the bankruptcy court at the request of Bostick replaced attorney White as Bostick's legal counsel and appointed Timothy Wittlinger (Wittlinger) as counsel of record to pursue the district court Bostick-Lindberg civil litigation in Case No. 79-40044/10297. In the same order, the bankruptcy court ratified the action taken by White between December 18, 1980 (the date that Bostick filed Chapter 11 proceedings) and November 29, 1982 by appointing him as special counsel to represent Bostick and its bankrupt estate in the district court litigation with Lindberg. White's appointment as special counsel was nunc pro tunc to December 18, 1980. On December 7, 1982, Lindberg, in an effort to expedite the proceeding before the district court, filed an application with the bankruptcy court seeking approval of the March 15, 1982 district court settlement. On December 10, 1982, Wittlinger, as Bostick's counsel of record, notified Lindberg by letter that Bostick would not honor the district court settlement of the Bostick-Lindberg civil litigation. On February 7, 1983, Bankruptcy Judge Graves, subsequent to a hearing, issued an order denying all pending motions seeking approval of the March 15, 1982 district court settlement, concluding that Wittlinger, Bostick's current legal counsel, had authority to repudiate the settlement and having properly exercised that authority in repudiating the agreement, the bankruptcy court was relieved from the responsibility of deciding if the March 15, 1982 district court settlement was in the best interests of the bankrupt estate because the issue was moot.
 
 
 8
 On January 6, 1984, Lindberg filed a motion in the district court before Judge Harvey, styled a "Motion to Enforce the Settlement and Dismiss Plaintiff's Complaint with Prejudice," seeking enforcement of the March 15, 1982 settlement and dismissal of the plaintiff's action. Bostick opposed the motion. On June 27, 1985, Judge Harvey granted the defendant Lindberg's motion and accordingly dismissed the plaintiff's action on the merits and ordered that the settlement be enforced. Judge Harvey in an opinion supporting his disposition of the action concluded that the district court possessed continuing jurisdiction over the case, that the district court proceedings had not been removed to the bankruptcy court, that the bankruptcy court had lifted the stay of the district court proceeding that had automatically attached to the action by operation of law pursuant to 11 U.S.C. Sec. 362, that the settlement has been duly concluded by Bostick's counsel of record on March 15, 1982, and that the Bankruptcy Rules which governed practices and procedures in bankruptcy court did not affect the jurisdiction of a district court in a related case or its authority to dismiss the plaintiff's complaint pursuant to a settlement concluded by the parties.
 
 
 9
 On appeal to this court, the plaintiff Bostick has charged that the district court's dismissal was erroneous because Wittlinger, Bostick's replacement legal counsel, properly repudiated the settlement and that the district court's enforcement of the March 15, 1982 settlement was improper in light of the intervening bankruptcy actions.
 
 
 10
 This circuit has long recognized the broad, inherent authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it, even where that agreement has not been reduced to writing. Bowater North America Corp. v. Murray Machinery, Inc., 773 F.2d 71, 76-77 (6th Cir.1985); Odomes v. Nucare, Inc., 653 F.2d 246, 252 (6th Cir.1981); United States v. Scholnick, 606 F.2d 160, 166 (6th Cir.1979); Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1371 (6th Cir.), cert. denied, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976); Kukla v. National Distillers Products Co., 483 F.2d 619, 621 (6th Cir.1973); All States Investors, Inc. v. Bankers Bond Co., 343 F.2d 618, 624 (6th Cir.), cert. denied, 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74 (1965). Once concluded, a settlement agreement is as binding, conclusive, and final as if it had been incorporated into a judgment and the actual merits of the antecedent claims will not thereafter be examined. Clinton Street Greater Bethlehem Church v. City of Detroit, 484 F.2d 185, 189 (6th Cir.1973).
 
 
 11
 At the outset, this court rejects the plaintiff's argument that Bostick's legal counsel Wittlinger could effectively repudiate the March 15, 1982 settlement which was duly concluded by the parties on that date. The plaintiff was represented by legal counsel and an officer of Bostick, both of whom assented to the agreement, the terms and conditions of which were incorporated in the district court record. Cf. In re Tidewater Group, Inc., 8 B.R. 930 (Bankr.N.D.Ga.1981).
 
 
 12
 In considering the district court's authority to enforce the settlement in light of the pending voluntary bankruptcy proceeding commenced subsequent to the filing of the suit in the district court, this court's attention is initially directed to the appropriate sections of the Bankruptcy Code impacting upon the matter. The plaintiff has argued on appeal that Bankruptcy Rule 9019(a), formerly 919(a), divested the district court of jurisdiction to enforce the settlement absent bankruptcy court approval thereof.[3] Pursuant to that Rule, the bankruptcy court may approve a compromise submitted to it by the trustee. See generally 4 Collier on Bankruptcy p 704.01 at 704-5 (15th ed.1985).
 
 
 13
 This court is in agreement with the district court below that those Rules govern the procedure to be followed in the bankruptcy court and do not negate the jurisdiction of a district court properly entertaining a related case under appropriate circumstances. The jurisdiction of the district court in the case at bar was invoked as a result of a diversity of citizenship of the parties pursuant to 28 U.S.C. Sec. 1332. The district court was not divested of that jurisdiction by the intervening petition in bankruptcy filed in the bankruptcy court. Once the bankruptcy court dissolved the automatic stay of proceedings imposed upon the district court by 11 U.S.C. Sec. 362, the district court was free to proceed with all phases of the litigation properly before it, including a disposition by trial or settlement. In sum, the district court possessed continuing jurisdiction that supported its enforcement of the settlement of the case properly pending before it. Cf. Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1371 (6th Cir.), cert. denied, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976); In re Neese, 12 B.R. 968, 970 (Bankr.W.D.Va.1981).
 
 
 14
 Accordingly, the district court's decision granting the defendant Lindberg's motion to enforce the settlement concluded on March 15, 1982 and to dismiss the plaintiff's complaint with prejudice is AFFIRMED.
 
 
 15
 WELLFORD, Circuit Judge, dissenting.
 
 
 16
 This case has a number of troubling aspects, not the least of which was the lack of opportunity of the creditors of plaintiff Bostick to express their views on the appropriateness of the settlement negotiated in District Judge Harvey's court. Certainly among the real parties at interest in Bostick's claim against defendant Lindberg, after the filing of the Chapter 11 bankruptcy petition, were the creditors of Bostick. All the parties and their representatives before the district court were aware of Bostick's bankruptcy at the time of the settlement and of the interest of the bankruptcy trustee as a fiduciary to secure a fair and reasonable settlement, primarily for the benefit of Bostick's creditors. After the proposed settlement was negotiated and before any final action to enforce it, Lindberg itself, in a responsive pleading to the creditor banks' effort in the bankruptcy court to have the settlement rejected, took the position that "Bostick should be ordered by the Bankruptcy Court to move for consideration of the proposed settlement." J/A at 66 (Lindberg's motion for rehearing and reconsideration filed November 22, 1982). Lindberg clearly was not asserting that the bankruptcy court had no jurisdiction to approve the proposed settlement. At that juncture, Lindberg took the position that "notice to creditors of the proposed settlement may be served" and that creditors should be afforded the opportunity for a hearing concerning the settlement in the bankruptcy court in which Bostick's bankruptcy action was pending. J/A at 67.
 
 
 17
 Furthermore, Lindberg itself appealed from the failure of the bankruptcy court to consider (and to reconsider) the proposed settlement on its merits to then District Judge Guy. Although he ruled in December 1982 that the interlocutory appeal by Lindberg would "not materially advance the ultimate termination of either the bankruptcy proceeding or the related civil action," and thus declined to grant the appeal, Judge Guy observed:
 
 
 18
 [A]lthough the parties knew that any settlement agreement would have to be approved by the bankruptcy court, neither Bostick nor Lindberg sought such approval.
 
 
 19
 J/A at 203 (emphasis added). Thus Judge Guy's view, with which all the parties apparently agreed, was that the proposed settlement agreement must have bankruptcy court approval.
 
 
 20
 Bostick acknowledges that the bankruptcy court lifted the automatic stay to permit Bostick to pursue the "related civil action against Lindberg" in the district court where it was originally filed, and that this action was never "removed" to the bankruptcy court for trial. Regrettably the bankruptcy court "never considered or decided if the district court settlement was in the best interest of the estate." It seems, however, that Bankruptcy Judge Graves took this nonaction because the creditors had never been notified. See J/A at 265-66. Instead, he ruled that Bostick's replacement counsel had the authority to reject the proposed settlement because the creditors did not receive notice, and apparently because at least several major bank creditors strongly urged rejection of the settlement as inadequate.
 
 
 21
 After having been rebuffed in its repeated efforts to have the bankruptcy court approve the settlement, Lindberg finally sought to have Judge Harvey order Bostick's civil action dismissed pursuant to the terms of the proposed settlement agreement. Previous to that time, Lindberg had taken the position in court that it recognized the settlement, in order to be finally effective, required a stamp of approval from the bankruptcy court. The record amply supports a conclusion that all parties and counsel understood that the proposed settlement announced in Judge Harvey's court, but never filed following that announcement, was subject to ratification by the bankruptcy court. The parties took positive and affirmative steps to carry out that understanding of the settlement. I do not believe that Judge Harvey should have allowed Lindberg to reverse its position that bankruptcy court approval was necessary. Recognizing, as did both Bostick's legal representative and Lindberg, that the interests of creditors were involved and that Bostick's counsel was acting in at least a quasi-fiduciary position, Judge Harvey should have withheld his dismissal of the case until the bankruptcy court considered the effect of the settlement on the interests of all the creditors, or until he himself determined, under the peculiar circumstances about which he was fully aware, that the settlement was reasonable and that no mistake or unconscionable undertaking had occurred.[1]
 
 
 22
 While I agree with the panel majority that the district court had jurisdiction to act based on the facts before it, I am convinced from positions taken by the parties in the bankruptcy court, and from all the circumstances, that the proposed settlement agreement included a tacit condition subsequent requiring bankruptcy court approval, or in the absence of bankruptcy court approval a similar determination by the district court itself with an opportunity for creditors of Bostick to be heard. The troubling lack of opportunity for creditors to be heard on the merits of the settlement, when coupled with Lindberg's original position that the proposed settlement required approval by the bankruptcy court, persuades me that the district court's dismissal of Bostick's cause of action should be set aside. I would remand to the district court for a hearing on whether the settlement is in the best interests of Bostick's creditors or for remand to the bankruptcy court for that purpose.
 
 
 
 [1]
 It is conceded by the parties herein that the district court thereafter possessed continuing jurisdiction to proceed with the disposition of the action commenced in February of 1979 and that any stay of proceedings pursuant to 11 U.S.C. Sec. 362 of the Bankruptcy Code was dissolved by the August 26, 1981 bankruptcy court order
 
 
 [2]
 From this court's review of the transcript of that hearing, it is apparent that, apart from colloquy between legal counsel for the parties and the court, no dispositive action by the court is reflected. It is also apparent in the record that the bankruptcy judge never considered or decided if the district court settlement was in the best interests of the estate. It could be inferred from the record that the bankruptcy court rejected the district court's settlement because of insufficient notice to Bostick's creditors as to its terms and conditions, although, as previously observed, the bankruptcy court's reasons for its action were not affirmatively stated in the record
 
 
 [3]
 Bankruptcy Rule 9019 superseded Rule 919 effective August 1, 1983. The two rules are essentially identical
 
 
 [1]
 I do not consider the authority relied upon by Judge Harvey, In re Tidewater Group, 8 B.R. 930 (Bankr.N.D.Ga.1981), to support his ruling. Tidewater cited with approval Lincoln National Life Insurance Co. v. Scales, 62 F.2d 582 (5th Cir.1933), to the effect that a debtor in possession's powers to bind the bankruptcy estate, including the rights of creditors, was subject to court approval. Thus, it held:
 [A]n agreement by a debtor in possession to compromise litigation should also be binding upon all parties to the agreement pending a court determination as to whether or not to approve the agreement. See e.g. Frazier v. Ash, 234 F.2d 320 (5th Cir.1956). Therefore, Tidewater is competent to enter an agreement which is binding pending Court approval or disapproval.
 
 
 [8]
 B.R. at 933
 Tidewater continued, in explanation:
 Of course, the issue of whether the agreement should be approved as being in the best interest of the creditors remains to be decided at the time when a hearing is held on the application for approval of the agreement. In re Haas Davis Packing Co., 2 BCD 167 (B.C.S.D.Ala.1975).
 
 
 [8]
 B.R. at 933